FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 11, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LYDIA H., | No. 4:17-CV-5077-FVS |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 11, 12. This matter was submitted for consideration without oral argument. Plaintiff was represented by attorney Chad Hatfield. Defendant was represented by Special Assistant United States Attorney Jeffrey R. McClain. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is granted and Defendant's Motion, ECF No. 12, is denied.

**JURISDICTION**

Plaintiff Lydia H. ("Plaintiff") filed for disability income benefits (DIB) on July 29, 2015, alleging an onset date of February 9, 2015. Tr. 157-58, 202. Benefits were denied initially, Tr. 99-101, and upon reconsideration, Tr. 108-09. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 29, 2016. Tr.44-69. On November 18, 2016, the ALJ denied Plaintiff's claim, Tr. 24-36, and on April 7, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in February 1969 and was therefore 47 years old at the time of the hearing. Tr. 157. She graduated from high school and served four years in the Marine Corps, and later served in the U.S. Army Reserve. Tr. 995, 999. After the Marines, she obtained a bachelor's degree in general studies with emphasis on music performance and sociology, and later obtained a master's degree in social work. Tr. 995, 999. Her last job was working for the Department of Veterans Affairs (VA) as a social worker. Tr. 1000. As a social worker, she provided trauma counseling and suicide prevention as well as other mental health

services.  Tr. 1000.  She was a concert-level French horn player, having played in the Marine Corps field band and in various other symphonies and community bands.  Tr. 995.  She was also an avid runner and completed at least 29 marathons.  Tr. 996.

In April 2011, Plaintiff was in a single-car motor vehicle rollover accident after her vehicle hit ice.  Tr. 666.  She was initially seen in the emergency room with back and shoulder pain, Tr. 665, but within a month was experiencing symptoms such as photophobia, phonophobia, dizziness, aggravation from visual stimulation, motion sickness, difficulty concentrating, difficulty with words and speech, vision changes, and lack of energy.  Tr. 1121.  She continued at her social work job half-time, but by May 2014 was complaining that working part-time was difficult, and she stopped working altogether in January 2015.  Tr. 996, 1121.

Plaintiff alleges she is unable to manage change or stress.  Tr. 254.  Her thinking is slow and she gets tired easily in a high sensory or mentally challenging environment.  Tr. 254.  She cannot process language, she lacks energy, completing tasks is difficult, and she has difficulty staying on task.  Tr. 254.  She can no longer drive, run marathons, or play the French horn.  Tr. 255, 314.  She gave her brother power of attorney for her financial matters.  Tr. 321.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two. At this step, the Commissioner considers the severity of the

3    claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers

4    from "any impairment or combination of impairments which significantly limits

5    [his or her] physical or mental ability to do basic work activities," the analysis

6    proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment

7    does not satisfy this severity threshold, however, the Commissioner must find that

8    the claimant is not disabled. 20 C.F.R. § 404.1520(c).

9    At step three, the Commissioner compares the claimant's impairment to

10   severe impairments recognized by the Commissioner to be so severe as to preclude

11   a person from engaging in substantial gainful activity. 20 C.F.R. §

12   404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

13   enumerated impairments, the Commissioner must find the claimant disabled and

14   award benefits. 20 C.F.R. § 404.1520(d).

15   If the severity of the claimant's impairment does not meet or exceed the

16   severity of the enumerated impairments, the Commissioner must pause to assess

17   the claimant's "residual functional capacity." Residual functional capacity (RFC),

18   defined generally as the claimant's ability to perform physical and mental work

19   activities on a sustained basis despite his or her limitations, 20 C.F.R. §

20   404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the Commissioner should conclude that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 9, 2015, the alleged onset date. Tr. 26. At step two, the ALJ found Plaintiff has the following severe impairments: neurocognitive disorder, anxiety disorder, affective disorder, headaches, and seizure disorder. Tr. 26. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 27. The ALJ then found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She can never climb ladders, rope, or scaffolding. She can occasionally climb ramps and stairs. She must avoid moderate exposure to extreme heat, extreme cold, loud noise, excessive vibration, and hazards. She should not work with dangerous machinery, unprotected heights, or in jobs requiring the operation of a motor vehicle. She can perform simple routine tasks, in a routine work environment with simple work-related decisions. She can have superficial interaction with coworkers and brief superficial interaction with the public. She is capable of adequate task-related interactions within these parameters.

Tr. 29.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 34. After considering the testimony of a vocational expert and Plaintiff's age,

education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as industrial cleaner, hospital cleaner, cook helper, housekeeping cleaner, production assembler, or hand packager. Tr. 35. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 9, 2015, through the date of the decision. Tr. 36.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability insurance benefits under Title II of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for review:

1. Whether the ALJ failed to properly consider the medical opinion evidence;

2. Whether the ALJ improperly rejected Plaintiff's symptom claims; and

3. Whether the ALJ made a proper step five finding.

ECF No. 11 at 10-11.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF No. 13 at 15-20. An ALJ engages in a two-step analysis to determine whether a

claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. Tr. 30.

First, the ALJ found that Plaintiff stopped working as a social worker for reasons other than her disability. Tr. 30. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ observed that Plaintiff returned to part-time work as a social worker after her accident in April 2011. Tr. 30, 503, 996. As the ALJ noted, she continued in that position until February 2015. Tr. 30, 51, 506. According to the ALJ, Plaintiff left

her job as a social worker "due to its severely stressful nature" rather than her disability. Tr. 30. This conclusion is based on Plaintiff's report in June 2015 that "she has been in a very hostile work environment with harassment by a supervisor which caused significant stress." Tr. 30, 491. However, the Court notes that the symptom complaint rejected by the ALJ ("her alleged inability to maintain or tolerate any stress," Tr. 30), is the very reason the ALJ found that she left her job as a social worker.

Moreover, the ALJ's determination that Plaintiff left her job due to difficulties with her supervisor is not supported by the record. Dr. Cancado began noting in May 2014 that Plaintiff was unable to work full time and that even working part time was difficult. Tr. 500. In July 2014, he indicated Plaintiff had been working part-time for a while and "[s]he seems unable to perform all tasks required for full-time work." The next month, Dr. Cancado wrote that she "continues to have difficulty working as a social worker," her symptoms prevent a full-time job, and even part-time work was difficult. Tr. 611. By October 2014, Plaintiff had "significant difficulty" performing her job and was pursuing retirement. Tr. 614. In December 2014, Dr. Cancado noted that Plaintiff was having frequent episodes of seizure-like activity and that stress may aggravate those symptoms. Tr. 494. She continued to have difficulty even with basic

activities of daily living, and "[a]t work, she cannot appropriately perform her tasks." Tr. 494.

By the time of her alleged onset date and the reported difficulties with her supervisor in early 2015, Dr. Cancado's notes reflect that Plaintiff had been struggling to meet job requirements for more than six months. Tr. 494. In March 2016, she told Andrew Ellis, Ph.D., a rehabilitation psychologist, that in her part-time job she was "only doing 5 or 10% of my real job." Tr. 996. While the ALJ notes Plaintiff's testimony that her part-time schedule required her to meet with three to four clients per day, the ALJ failed to acknowledge that she also testified she was not able to see that many clients or assist with crisis control as required. Tr. 57, 506. Additionally, the VA eventually awarded her medical retirement in October 2015. Tr. 996. Based on the foregoing, it was not reasonable for the ALJ to find that Plaintiff left her job for reasons unrelated to her symptom complaints.

Second, the ALJ determined the treatment records and exam findings document a mild cognitive disorder with adequate concentration for simple tasks, and her psychological impairments and seizure disorder are well-controlled with medication. Tr. 30-31. The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (2001); 20 C.F.R. § 404.1529(c)(2) (2011). Further, an

impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ cited a number of records in support of this finding, but in particular noted "appointments in 2012 noted slow improvement in her cognitive impairment." Tr. 30 (citing Tr. 546, 562, 732). This overstates the record. In February 2012, Adam Nelson, Ph.D., a neuropsychologist, indicated that Plaintiff had experienced a concussion/mild traumatic brain injury (TBI) with numerous changes in functioning, including difficulties with multi-tasking, processing, and motor speed, balance, sensitivity to light, migraines, daytime fatigue, and loss of appetite. Tr. 546. She "had noticed some improvement in functioning over time; however, she is not back to her previous level of functioning." Tr. 546. Test results indicated below expectation performance regarding processing speed, psychomotor speed, and verbal memory; and she performed very slowly on attention tasks. Tr. 546. Dr. Nelson opined her cognitive deficits are "atypical" for someone with a concussion. Tr. 546.

In March 2012, Plaintiff was working part-time, attending speech and physical therapy, and was "continuing to have some occasional word-finding problems and fatigue." Tr. 562. Plaintiff's speech therapist found some improvement in May 2012, but Plaintiff continued to show a speech delay with pauses and hesitations in her sentences. Tr. 732. It was noted to be difficult for

her to write information and comprehend what she was reading. Tr. 732. Thus, while the ALJ is technically correct that there is an indication of some minor improvement during 2012 noted in these records, the implication that Plaintiff's condition was controlled by medication or otherwise significantly improved is not supported by the overall record.

For example, the ALJ did not note that in July 2013, the speech therapist found continued delay in processing information and word-finding difficulties. Tr. 934. She had improved her daily living skills but continued to have difficulty with organizational tasks and would get confused with too many details. Tr. 934. In August 2013, Dr. Cancado noted significant fatigue, worsening condition, paresthesias, decreased ability to concentrate, phonophobia and photophobia, and increased imbalance and gait disturbance. Tr. 584. The ALJ cited findings of John Christensen, Ph.D., who completed a neuropsychological report in July 2015. Tr. 321-27. The ALJ listed some of the data from Dr. Christensen's test results, but failed to note that Dr. Christensen compared the 2015 test results to prior test results and found "there appeared to be no improvements in the cognitive areas assessed over the last 3 years since her initial evaluation." Tr. 326. In fact, some of Plaintiff's verbal skills, an area of strength for her, had decreased from "superior" to "average to high average" over time. Tr. 326. He also noted that "she may be downplaying her emotional well-being." Tr. 326. Dr. Christensen

opined that "[a]t this point in time cognitive improvement is very questionable. . . . Her work demands should not increase." Tr. 327. This contradicts the ALJ's inference that Plaintiff's cognitive condition was improved or well-controlled.

The ALJ also noted findings by Andrew Ellis, Ph.D., a rehabilitation psychologist, in March 2016, that Plaintiff was amiable, cooperative, and slightly anxious. Tr. 31, 994. According to the ALJ, testing reflected adequate concentration and attention for basic demands, mild memory impairment, difficulty with complex executive functioning, normal verbal expression, and difficulty formulating complex idea. Tr. 31 (citing Tr. 1001-02). Based on the ALJ's interpretation of Dr. Ellis' findings, Plaintiff would appear to be only mildly challenged. However, Dr. Ellis actually found:

> persisting cognitive changes, sensory changes, emotional distress, and personality change. Based on the evaluation of the BIRC [Brain Injury Rehabilitation Center] team today, [Plaintiff] continued to demonstrate reduced processing speed, reduced complex attention skills, reduced memory skills, and reduced executive function skills. In addition to these cognitive changes, she demonstrated altered communication skills with dysfluency. She also demonstrated and reported sensory overload in response to both visual and auditory stimulation that undermines her cognitive functioning. Her vision demonstrated changes related to the accident of 4/11. She demonstrated reduced cognitive and physical endurance overall as well as reported persisting headaches.

Tr. 997. Dr. Ellis diagnosed major neurocognitive disorder and adjustment disorder with mixed anxiety and depressed mood. Tr. 997.

The ALJ's findings regarding improvement and Plaintiff's capabilities do not reasonably take into account the entirety of the record or even the entirety of specific records cited by the ALJ.  Although the ALJ found Plaintiff's condition was improved and controlled with medication, the ALJ cited no records showing improvement in Plaintiff's condition after 2012; in fact, the record shows that Plaintiff's cognitive condition did not improve.  Furthermore, even if the ALJ's finding that Plaintiff retains adequate concentration for simple tasks is correct, this finding does not address Plaintiff's fatigue and reduced cognitive and physical endurance which have prevented full-time work since her accident began.  This is not a clear and convincing reason supported by substantial evidence.

Third, the ALJ found Plaintiff's allegations of disability are inconsistent with her lack of interest in treatment for her cognitive impairment.  Tr. 31. Credibility is undermined "by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.  While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).  The ALJ noted that cognitive rehabilitation was recommended to Plaintiff in July 2015 "as records don't reflect that this has happened," and again March 2016, but Plaintiff declined.  Tr. 31, 327, 660, 997.

On this basis, the ALJ found that Plaintiff lacked interest in treatment for her cognitive issues.

This characterization of Plaintiff's treatment history is not supported by substantial evidence. There is no indication that Plaintiff's lack of cognitive therapy by July 2015 was due to Plaintiff's lack of interest, or whether at that point cognitive therapy had even been offered to her. Moreover, in August and December 2015, Dr. Cancado indicated that, "[s]he is having cognitive therapy," indicating that, in fact, Plaintiff did participate in cognitive therapy. Tr. 485, 646. With respect to declining cognitive therapy in March 2016, the recommended therapy involved "comprehensive multiple week treatment" at a facility located in Portland, Oregon, several hours from Plaintiff's home. Tr. 660, 997. A statement from a treating provider submitted to the Appeals Council and not reviewed by the ALJ explains that at the time the therapy was offered, she would have had to provide her own housing and transportation and would have had to leave her pet behind, which were reasonable considerations under the circumstances. Tr. 306. The record reflects that Plaintiff attended at least some cognitive therapy and had a reasonable excuse for declining intensive therapy hours away from her home. Therefore, the ALJ's suggestion that Plaintiff "lacked interest" in attending cognitive therapy is without basis in the record.

Fourth, the ALJ concluded there is inconsistent evidence regarding Plaintiff's motor vehicle accident which undermines the reliability of her statements about the severity of her cognitive impairment. Tr. 32. In assessing a claimant's symptom complaints, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ cited hospital emergency records after her April 2011 motor vehicle accident noting no loss of consciousness, lack of trauma to her head, alert behavior, and normal mood and affect. Tr. 32, 665-67, 675. She had no neurological complaints and a normal neurologic examination the day after the accident. Tr. 32, 838-39. The ALJ also noted that Plaintiff repeatedly stated she lost consciousness during the accident due to a head injury, which the ALJ found is inconsistent with emergency room reports. Tr. 32 (citing Tr. 312, 503, 532, 552, 1006). The ALJ concluded that "[a]lthough the claimant's lengthy treatment records are consistent with some degree of cognitive impairment following her MVA in 2011, the inconsistencies highlighted . . . indicate that this injury was not as severe as reported by the claimant." Tr. 32.

However, it is noted that hospital reports immediately after the accident also mention that Plaintiff did not remember the accident and note "?" next to loss of consciousness. Tr. 666, 668. In March 2016, Plaintiff reported that "she can't remember what she remembers outright and what she remembers from people

telling her." Tr. 1006. There is at least some ambiguity in the record about

Plaintiff's loss of consciousness. Regardless, less than a month after the accident,

Plaintiff had an initial visit with Dr. Cancado and relayed the neurological and

cognitive symptoms which continued to impact her throughout the record. The

"inconsistency" identified by the ALJ regarding loss of consciousness is a minor

detail which does not reasonably reflect on Plaintiff's credibility, as there is no

suggestion or implication by any provider in the record that Plaintiff was

intentionally misleading medical personnel, exaggerating, or overstating her injury.

Furthermore, in light of the fact that Plaintiff indisputably sustained a head injury

which impacted her memory and cognition, it is unreasonable to hold one detail

about the accident against her. This is not a clear and convincing reason for giving

less weight to Plaintiff's symptom complaints.

Fifth, the ALJ found Plaintiff's activities since the alleged onset date

indicate she is not as limited as alleged. Tr. 31. It is reasonable for an ALJ to

consider a claimant's activities which undermine claims of totally disabling pain in

assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857.

However, it is well-established that a claimant need not "vegetate in a dark room"

in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561

(9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part

of her day engaged in pursuits involving the performance of physical functions that

are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ found Plaintiff's activities of walking, running, and strength training are inconsistent with her allegations. Tr. 31 (citing Tr. 433, 996); *see also* Tr. 50. The ALJ also noted that Plaintiff reported that she leaves home on a daily basis to shop, exercise, visit with friends, or attend social outings. Tr. 31, 996. Plaintiff testified she took an on-line continuing education class to maintain her social work license, took an on-line music theory class, plays computer games, and has a blog. Tr. 31, 48-49, 58-59. The ALJ found these activities indicate Plaintiff is not as limited as alleged, retains adequate stamina for gainful activity, and can persist with at least unskilled work tasks requiring routine social interaction. Tr. 31.

While these types of activities may in some cases be inconsistent with disability, depending on the symptoms alleged, in this case they do not demonstrate that Plaintiff retains "adequate stamina for gainful activity." Tr. 31. None of the activities listed by the ALJ involves the type of continuous persistence

required by an eight-hour workday.  Furthermore, even if these activities were reasonably considered by the ALJ in evaluating Plaintiff's symptoms complaints, in light of the ALJ's errors in considering and characterizing the record detailed throughout this decision, the Court concludes that Plaintiff's activities are not by themselves persuasive or convincing reasons for giving less weight to Plaintiff's symptom complaints.

Based on the foregoing, the ALJ's determination that Plaintiff's symptom complaints are less than fully credible is not legally sufficient.

## B.	Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected the medical opinion of her treating neurologist and psychiatrist Paulo Cancado, M.D., examining neuropsychologist John Christensen, Ph.D., and treating physician assistant Carol Flaugher, PA-C.  ECF No. 12 at 7-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. Paulo Cancado, M.D.

Dr. Cancado, a psychiatrist and neurologist, began treating Plaintiff in May 2011, one month after the motor vehicle accident. Tr. 1121. In May 2016, Dr. Cancado completed residual functional capacity assessment forms for Plaintiff's physical and mental functioning. Tr. 509-20. Mentally, Dr. Cancado assessed nine

moderate and six marked limitations, noting the form was filled out based on Plaintiff's report of cognitive impairments. Tr. 509-11. Physically, Dr. Cancado found that Plaintiff could lift or carry 10 pounds occasionally and frequently, stand or walk less than two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, and has occasional postural limitations. Tr. 514-15. He assessed manipulative, visual, communicative, and environmental limitations. Tr. 516-18. He indicated that an objective evaluation of physical function could be obtained from Plaintiff's physical therapist. Tr. 520.

Dr. Cancado also wrote five letters cumulatively releasing Plaintiff from work at her part-time job from March 6, 2015, to January 31, 2016. Tr. 488-89, 630, 649, 653. Additionally, in August 2015, he opined that Plaintiff:

> will need to retire from her part-time position as a Social Worker due to her present mental and physical condition. She is unable to perform her essential functions as a Social Worker because the frequent migraine headaches, vestibulopathy, dizziness and cognitive impairment affect her ability to perform her position effectively. She also is unable to meet with and counsel veterans, as the position requires. As noted previously, she has been unable to work full-time since her on-the-job motor vehicle accident.

Tr. 507.

The ALJ gave some weight to Dr. Cancado's assessments and agreed with Dr. Cancado's opinion that Plaintiff's impairments prevent her from pursuing full-time employment as a social worker. Tr. 33. Because Dr. Cancado's opinion was contradicted by the opinions of Edward Beaty, Ph.D. and Eugene Kester, Ph.D.,

1  Tr. 79-81, 94-96, the ALJ was required to provide specific and legitimate reasons

2  for rejecting Dr. Cancado's opinion.  *Bayliss*, 427 F.3d at 1216.

3       First, the ALJ found that Dr. Cancado's assessments of physical and

4  psychological limitations are contrary to the record as a whole and his own

5  treatment records.  Tr. 33.  An ALJ may discredit treating physicians' opinions that

6  are unsupported by the record as a whole or by objective medical findings.  *Batson*

7  *v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ

8  asserts that Dr. Cancado's treatment records since February 2015 indicate that

9  Plaintiff's impairments "are not severe enough to preclude all gainful

10  employment."  Tr. 33.  The ALJ cites an April 2015 record where Plaintiff was

11  doing "relatively well at this time," but fails to acknowledge that Dr. Cancado also

12  noted that, "[s]he has done much better after stopping working."  Tr. 631.  The fact

13  that Plaintiff was doing relatively well only after stopping work supports, rather

14  than undermines, Dr. Cancado's assessments of limitations.

15       The ALJ also cites December 2015 and April 2016 reports by Plaintiff that

16  she had no recent seizure activity or recent headaches, but ignores Dr. Cancado's

17  notes that she "continues to have some degree of imbalance" (Tr. 657); that

18  because of her cognitive impairment, she frequently forgets to take medication (Tr.

19  657); and she continued to have cognitive impairment, sometimes with anxiety and

20  anger.  Tr. 660.  Additional findings by Dr. Cancado in December 2015 include

notes that recent neuropsychological testing showed no improvement, she had difficulty remembering to take her medication, she experienced staring spells with post ictal confusion or disorientation, and experienced imbalance and occasional tremors when exhausted. Tr. 485. The ALJ also failed to address Dr. Cancado's detailed summary of Plaintiff's treatment history which concludes with the finding that she has been unable to work full-time since her motor vehicle accident. Tr. 503-07. Based on the foregoing and as discussed throughout this decision, the ALJ's determination that Dr. Cancado's opinions are not based on his records or consistent with the record overall is not a reasonable conclusion.

Second, the ALJ found that Dr. Cancado's opinions are inconsistent with Plaintiff's activities and her departure from her last job. Tr. 33. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ noted Plaintiff ran a marathon after her accident, suggesting that is inconsistent with Dr. Cancado's findings of fatigue, decreased concentration, imbalance, and gait disturbance. Tr. 30, 33. However, Plaintiff testified she last "tried" a half marathon in 2013, Tr. 49, and the record reflects she needed an "escort" for that marathon because noise and visual stimuli trigger

vertigo.[1]  Tr. 332.  She was re-referred to physical therapy in July 2013 due to falls while running even with a service dog.  Tr. 912.  A fall in March 2013 required stitches and Plaintiff estimated she falls approximately every 10 days.  Tr. 912.  It was also noted that Plaintiff fatigues after six hours of activity and usually needs a nap in the afternoon.  Tr. 912.

While on its face "running a marathon" seems inconsistent with the limitations alleged by Plaintiff and those assessed by Dr. Cancado, the record indicates that Plaintiff's ability to run marathons was in fact reduced or eliminated by fatigue, imbalance, and gait disturbance.  Furthermore, by the time of the alleged onset date, Plaintiff had not run or attempted to run even a half marathon in nearly two years.  As discussed *supra*, the ALJ findings regarding Plaintiff's running and other activities are not supported by the record.  Thus, the ALJ findings do not support the proper rejection of Dr. Cancado's opinions.

The ALJ also found that Plaintiff's part-time work as a social worker is inconsistent with Dr. Cancado's opinion that Plaintiff is unable to work.  Tr. 33.  As discussed *supra*, the ALJ's conclusion that the stressful nature of Plaintiff's job as a social worker caused her to stop working is entirely consistent with the stress-

---

[1] Plaintiff testified she "tried" to run a half marathon; the record is silent as to whether she was able to complete it.

related limitations assessed by Dr. Cancado. Additionally, by the time of Dr. Cancado's May 2016 opinion, Plaintiff had not been working for over a year, so her pre-onset date ability to work part-time does not undermine his findings regarding full-time work.

The ALJ also asserted that Plaintiff could not do full-time social work because of its stressful nature ("the claimant's inability to maintain full-time employment as a social worker appears to have been because of the very stressful nature of this position"), implying that Plaintiff could do other less stressful full-time work. Tr. 33. This implication is not supported by the record, as the ALJ identified no evidence in Dr. Cancado's records, or elsewhere in the record, that at any point after Plaintiff's accident she participated in activities consistent with the ability to perform full-time work. In fact, Dr. Cancado indicated on multiple occasions that Plaintiff is unable to perform full-time work. Tr. 506-07, 607, 611, which is also consistent with Dr. Christensen's finding that her work demands should not increase. Tr. 326.

Third, the ALJ found that Dr. Cancado's opinions are based on Plaintiff's self-report. Tr. 33. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 599; *Fair*, 885 F.2d at 604. As discussed *supra*, the ALJ's findings regarding Plaintiff's

subjective complaints are not supported by substantial evidence. Thus, this is not specific, legitimate reason for rejecting Dr. Cancado's opinions.

### 2. *John Christensen, Ph.D.*

In July 2015, Dr. Christensen examined Plaintiff and prepared a neuropsychological assessment. Tr. 321-27. He diagnosed Plaintiff with mild neurocognitive disorder due to traumatic brain injury, causing problems and deficits with attention, memory, cognitive flexibility and processing speed; and depressive disorder with major depression and, or, persistent depressive disorder. Tr. 326. After comparing test results from testing three years prior, Dr. Christensen stated that there "appeared to be no improvements in the cognitive areas assessed"; in fact, her scores decreased from "superior" to "high average." Tr. 326. He opined that, "based on behavioral observations, she may be downplaying her emotional well-being." Tr. 326. Additionally, Dr. Christensen indicated, "[h]er work demands should not increase" and suggested Plaintiff apply for Social Security benefits. Tr. 327.

The ALJ gave some weight to Dr. Christensen's assessment and agreed that Plaintiff's impairments prevent full-time employment as a social worker. Tr. 33. Because Dr. Christensen's opinion was contradicted by the opinions of Dr. Beaty and Dr. Kester, Tr. 79-81, 94-96, the ALJ was required to provide specific and

legitimate reasons for rejecting the rest of Dr. Christensen's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Christensen's assessment is "conclusory" and gives greater weight "to more detailed assessments." Tr. 33. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. This finding by the ALJ is without basis in the record. Dr. Christensen's assessment is based on a thorough neuropsychological assessment, including Plaintiff's treatment history, behavioral observations, at least nine different objective tests, and a thorough discussion of the test results. Tr. 321-27. The ALJ fails to identify any specific evidence contradicting Dr. Christensen's assessment, and fails to identify which part of his opinion is conclusory. And, although other "more detailed assessments" are mentioned, the only opinions credited in full by the ALJ are those of the reviewing psychologists, Drs. Beaty and Kester. Tr. 33-34. There is no reasonable interpretation of those opinions resulting in a finding that they are "more detailed" than Dr. Christensen's assessment, as they supply little explanation for the limitations assessed. Tr. 75-80, 91, 93-95. Dr. Beaty's opinion, in particular, appears to be based primarily on a portion of Dr. Christensen's findings. Tr. 75. Based on the foregoing, the ALJ characterization of Dr. Christensen's opinion as "conclusory" is not supported by substantial evidence.

Next, the ALJ gave less weight to Dr. Christensen's opinion for the same reasons given for assigning less weight to Dr. Cancado's opinion. Tr. 33. According to the ALJ, Plaintiff's work history, activities, testing, and overall treatment record testing are inconsistent with Dr. Christensen's opinion. Tr. 33. As discussed *supra*, these reasons are not specific, legitimate, and supported by substantial evidence with respect to Dr. Cancado's opinion, and they are likewise insufficient to reject Dr. Christensen's opinion.

### 3.    Carol Flaugher, PA-C

Ms. Flaugher submitted an undated statement indicating that she has known and worked with Plaintiff for nine years. Tr. 303. She noted "severe cognitive deficits" which have not improved. Tr. 303. Some of the difficulties reported by Ms. Flaugher include:  slower processing of verbal and written language; reduced reading speed; cannot talk on the telephone; difficulty tracking speakers with accents or speaking rapidly; difficulty with multi-step tasks; difficulty cooking; cannot anticipate stimuli; needs reminders for daily tasks; heightened PTSD, anxiety and depression; she can only move forward in space and cannot stand on one foot; difficulty driving and cannot drive more than 10 miles, at night, in the rain or snow; loses her train of thought while talking; word finding difficulty; must nap every afternoon; shopping is limited due to crowds and fluorescent lighting; her brother manages her finances with a power of attorney; and her ability to work

through problems is poor.  Tr. 303-07.  Ms. Flaugher noted Plaintiff was a concert

grade French horn player and was part of a Marine Corps band and played with the

Portland Orchestra, but can no longer tolerate the noise from the horn and cannot

follow music.  Tr. 304.  Plaintiff has three or more panic attacks per week and will

hide in a restroom or drop to the ground during an attack.  Tr. 304.  Panic attacks

are triggered by overstimulation, changes in routine, and crowds.  Tr. 304.

Although Plaintiff faults the ALJ for not giving weight to Ms. Flaugher's

statement, ECF No. 11 at 15, Ms. Flaugher's statement was first submitted to the

Appeals Council and therefore was not available for review by the ALJ.  Tr. 4-5.

The ALJ could not have erred by failing to review an opinion not before her.

Notwithstanding, the Court must consider Ms. Flaugher's opinion in determining

whether the ALJ's decision was supported by substantial evidence.  *Brewes v.

Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).  As noted

throughout this decision, based on the record as a whole, including Ms. Flaugher's

opinion, the ALJ's findings are not supported by substantial evidence.

**C.    Remedy**

The Court concludes that the ALJ erred in considering Plaintiff's symptoms

complaints and discounting the opinions of Dr. Cancado and Dr. Christensen.

Thus, the Court must decide whether to remand the case to the Social Security

Administration for further proceedings or for the payment of benefits.  Remand is

appropriate where it is not clear from the record whether the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* at 593 (citations omitted). "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (citations omitted).

Because the Court concludes that the ALJ did not provide legally sufficient reasons for discounting the opinions of Dr. Cancado and Dr. Christensen, those opinions are treated as true. *See id.* at 594. Dr. Cancado opined on multiple occasions that Plaintiff cannot perform full-time work and assessed limitations inconsistent with full-time work, and Dr. Christensen opined that Plaintiff's work should not increase from part-time. Once those opinions are credited as true, it is apparent that Plaintiff cannot perform full-time work and an award of benefits in mandated. Further development of the record is unnecessary as there are no

outstanding issues. Under these circumstances, remand with a direction for payment of benefits is appropriate.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes that the ALJ's decision is not supported by substantial evidence and free of harmful legal error. For the reasons discussed above, the Court GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's motion for summary judgment, and REMANDS for the calculation and award of benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. The Court enters JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** October 11, 2018.          _s/ Rosanna Malouf Peterson_
                                    ROSANNA MALOUF PETERSON
                                    United States District Judge